IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| ALEKSANDR SHEVTSOV, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 210076N |
| | ) | TC-MD 210077N |
| | ) | |
| v. | ) | |
| | ) | |
| CLACKAMAS COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed the real market value of properties identified as Accounts 05023237

and 05023238[1] (subject properties) for the 2019-20 and 2020-21 tax years.  A remote trial was

held October 25, 2021.  Plaintiff appeared and testified on his own behalf.  Todd Cooper,

Appraisal Supervisor, appeared on behalf of Defendant.  Richard Valasek (Valasek), registered

appraiser, testified on behalf of Defendant.  Plaintiff's Exhibits 1 to 11 were received over

Defendant's objection to email service of Exhibits 3 to 11.[2]  Defendant's Exhibits A to K were

received over Plaintiff's objection to Exhibit J, a map that lacked a legend or scale.[3]

I. STATEMENT OF FACTS

The subject properties are two vacant lots located in a subdivision in unincorporated

Clackamas County, each approximately 7,000 square feet in size.  (Def's Ex A at 3.)  Plaintiff

testified that he and his brother-in-law, a general contractor, bought a 0.89-acre property in 2005

---

[1] Account 05023237 is also identified as tax lot 2503 and Account 05023238 is tax lot 2504.  (*See* Compl at 2; Def's Ex A at 7.)  Account 05023237 was appealed in case 210076N and Account 05023238 was appealed in case 210077N.  The two cases were heard together at trial and the parties submitted joint exhibits for both cases.

[2] Defendant had previously accepted email service from Plaintiff and Defendant received the exhibits 10 days before trial.  *See* Tax Court Rule-Magistrate Division 3 A (service), 12 C(1)(a) (exhibits).

[3] Valasek explained the purpose of the map in his testimony.

that would become the subdivision. One house was located on the property at the time they sought approval of the subdivision plat. (*See* Ex 2 at Fig 3 ("slope profile").) The plat was recorded in 2010 with five lots. (Def's Ex A at 3.) Houses had been built on the other three lots in the subdivision as of January 1, 2019. (*Id.*; Def's Ex B at 7 (lots 2501, 2502, and 2505 built).)

Plaintiff testified that he and his brother-in-law extended utilities to the lots and built sidewalks as conditions for the subdivision approval. He thought his brother-in-law would be the builder for all the lots, but he decided to move on and build elsewhere. At some point the partnership dissolved and Plaintiff ended up with two lots and his brother-in-law kept two. Defendant inquired whether Plaintiff had ever applied for building permits for the subject properties and his answer, though evasive, appeared to be no.

A.      *Whether the Subject Properties are Buildable*

Plaintiff testified that the subject properties are unbuildable because foundations cannot be placed on the uncontrolled fill. He and his brother-in-law hired H.G. Schlicker & Associates (Schlicker) to perform a geotechnical report for the subdivision approval. (*See* Ptf's Ex 2.) Schlicker made seven test boring sites (B-1 to B-7) and sites B-2, B-5, and B-6 are on the subject properties. (*See id.* at Fig 2; *see also* Def's Ex J.) Plaintiff testified that those three boring sites show that the subject properties are unbuildable because they have fill that exceeds a depth of four feet. (Ptf's Ex 2, App B at 2-3.) He testified that the Schlicker report indicated such sites are not recommended for development. (*See* Ptf's Ex 1 at 4, Ex 2 at 5.) Plaintiff testified that it is nearly impossible to remove that amount of fill and he is not aware of anyone who would dig out four or more feet of fill and rocks.

The Schlicker report's "conclusions and recommendations" section states: "There is approximately 2.5 to 4 feet of uncontrolled fill at the site, with localized areas of fill that may be

greater than 4 feet thick. These materials are not suitable to support building loads." (Ptf's Ex 2 at 4.) It further states: "Individual and/or continuous spread footings should bear in undisturbed, native, non-organic, firm soils, *or properly engineered and compacted structural fill placed on these soils.*" (*Id.* at 5 (emphasis added).) The land use hearing officer concluded "that it is feasible to develop the property with five residential lots, provided the recommendations in the geotechnical report are followed." (Ptf's Ex 1 at 5.) The officer further found the "site is, or can be made stable, provided development occurs in accordance with recommendations included in the [geotechnical] report." (*Id.* at 4.)

Valasek testified that he found nothing in the hearing officer report, the Schlicker report, or a 2011 appraisal report supplied by Plaintiff indicating that the subject properties were unbuildable. He also asked the county planning department, which responded that it does not approve subdivision plats with unbuildable lots. (*See* Def's Ex H (email from county planning department stating that the lots "[have] potential for development").) Valasek testified that it is typical for contractors to mitigate for uncontrolled fill by scraping the land and then bringing in compacted fill with inspections at each stage of the process.

B.      *Real Market Value of Subject Properties*

For the 2020-21 tax year, the tax roll real market value of each subject property was $107,792 and its maximum assessed value was $66,992. (Compl at 2.) Plaintiff contends that the real market value of each subject lot was $60,000. (*Id.* at 1.) In support of the value, he supplied Defendant with an appraisal from 2011 that concluded a value of $60,000 for each lot. (Def's Ex C at 1, D.) Valasek testified that he did not rely on the 2011 appraisal report because it is dated relative to the 2019-20 and 2020-21 tax years. He noted that the appraiser concluded that the lots were buildable. (*See* Def's Ex D at 4.)

Plaintiff testified that a 0.94-acre property near the subject properties sold for $125,000 in July 2021. (Ptf's Ex 9 at 1-2.) He noted the larger size and capacity to create multiple lots. Plaintiff testified that a lot in the subject subdivision sold for $72,500 in 2013. (Ptf's Ex 3.) He identified another property that sold for $85,250 in 2017. (Ptf's Ex 10.) Valasek testified that those sales were too remote in time from the assessment date.

Valasek testified that he determined that the highest and best use of each subject property was for a single-family dwelling. (*See* Exs A-C.) He looked for relevant sales that occurred close to the assessment date and used the sales comparison approach. Valasek testified that it was difficult to find bare land sales; many comparable sales that he identified have since been developed and sold with homes. Valasek adjusted for time based on Defendant's certified ratio studies and for size, location, site features, and site improvements. He concluded that the real market value of each subject property was $150,000 as of January 1, 2020.[4] (Def's Ex C.)

The parties discussed Valasek's comparable sales at length. Plaintiff testified that Valasek's sale 1 had a house, noting a reference on Zillow to "a vacant land home" with one bedroom and zero bathrooms and a picture showing a boat under a carport-type structure. (Ptf's Ex 4, Def's Ex B at 13.) Valasek responded that sale 1 evidently included that structure at the time of sale, but it was demolished to build a house. (*See* Def's Ex B at 17 (finished home).) Any structure existing at the time of sale had no value and, in fact, was a detriment that cost money to remove. Plaintiff testified that sale 2 was for two buildable lots not one. Plaintiff inquired whether comparable sale 4 was improved, noting he found evidence that it was a sale of

---

[4] Valasek concluded a 2019-20 real market value of $140,000 each for the subject properties and presented comparable sales to support the value conclusion. (Def's Ex C.) As for the 2020-21 tax year, Plaintiff questioned Valasek's comparable sales and presented rebuttal evidence. Because Defendant moved to dismiss the 2019-20 tax year on grounds unrelated to its value evidence, the court declines to discuss that value evidence here.

a two-bedroom, two-bathroom house. (Ptf's Ex 5.) Valasek responded that sale 4 was a vacant lot next to a house at the address he listed in the sales grid. (Def's Ex B at 5.) Sale 4 did not have an address assigned yet, so he used the adjacent house for reference. Noting that the sales in his 2011 appraisal report were all within 1.28 miles, Plaintiff criticized the reliability of Valasek's sales, some of which were nearly 2 miles away. (*See id.* (1.71 and 1.8 miles).)

## II. ANALYSIS

The issues presented are the real market values of the subject properties for the 2019-20 and 2020-21 tax years. A preliminary issue is whether the 2019-20 tax year should be dismissed.

As the party seeking affirmative relief, Plaintiff bears the burden of proving his case by a preponderance of the evidence. ORS 305.427.[5] Preponderance of the evidence means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Etzger v. Clatsop County Assessor*, TC-MD 120534D, WL 5350257 at *3 (Oct 30, 2012). Defendant bears the burden of proof with respect to its request to increase the subject properties' 2020-21 real market values to $150,000.

///

///

___
[5] The court's references to the Oregon Revised Statutes (ORS) are to 2019.

A.     *2019-20 Tax Year Appeals*

For the first time at trial,[6] Defendant moved to dismiss Plaintiff's appeals for the 2019-20 tax year because Plaintiff failed to appeal to the Board of Property Tax Appeals (BOPTA) and failed to state a claim under ORS 305.288. A taxpayer that disputes real market value must appeal to BOPTA before filing an appeal to this tax court. ORS 305.275(3). If a taxpayer fails to appeal to BOPTA, this court may nevertheless hear appeals for the current tax year and either of the two immediately preceding tax years under two circumstances. ORS 305.288(1), (3). First, if the property is used primarily as a dwelling of a certain type and size, and the difference between the correct real market value and the assessed real market value is at least 20 percent. ORS 305.288(1). Second, if "good and sufficient cause" exists for the taxpayer's failure to appeal to BOPTA. ORS 305.288(3).

Plaintiff does not contend that he appealed the 2019-20 tax year to BOPTA, nor has he explained why he failed to do so, much less presented "good and sufficient cause." Thus, the only avenue open for Plaintiff is under ORS 305.288(1). As an initial matter, he must show the subject properties were used primarily as dwellings or vacant.

Only certain types of dwellings qualify under ORS 305.288(1)(a): "a single-family dwelling, a multifamily dwelling of not more than four units, a condominium unit, a manufactured structure or a floating home." The subject properties are each land without any buildings or structures affixed, though Plaintiff referenced a "trailer" located on one of the properties. This court recently concluded that a "property must include a building or structure in order to satisfy the 'dwelling' requirement" in

---

[6] Defendant's motion to dismiss is based on Plaintiff's failure to state ultimate facts constituting a claim, which may be made "at the trial on the merits." *See Work v. Dept. of Rev.*, 363 Or 745, 752, 429 P3d 375, 379 (2018) (explaining that ORS 305.288 is not a statute of limitation, but rather describes the tax court's authority and constrains its ability to order relief); *see also* TCR 21 G(3) (setting forth the rule).

ORS 305.288(1)(a). *Shevtsov v. Department of Revenue and Clackamas County Assessor*, TC 5392, WL 1127031 *7 (Or Gtg Def-Inv's Mot to Dismiss, Mar 4, 2020) (living in a van on the property does not qualify under ORS 305.288(1)(a)). Because the subject properties were not used as dwellings for the 2019-20 tax year, Plaintiff's appeal for that tax year must be dismissed.

B.     *2020-21 Tax Year Appeals*

   1.     *Whether the subject properties were unbuildable*

Plaintiff focused primarily on his claim that the subject properties were unbuildable. The evidence presented does not support Plaintiff's claim. The Schlicker report indicates that the subject properties are buildable assuming proper steps are taken to address the uncontrolled fill. The hearing officer approved the subdivision plat, subject to compliance with the Schlicker report's recommendations. Indeed, houses have been built on other lots in the subdivision. Plaintiff's 2011 appraisal report contemplates that the subject properties are buildable. Plaintiff has offered no evidence suggesting that conditions have changed, or new evidence has been discovered since the Schlicker report was completed and the plat was approved.

   2.     *Real market value of the subject properties*

Real market value is defined as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). The assessment date for the 2020-21 tax year was January 1, 2020. *See* ORS 308.007; 308.210. Real market value must "be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). To determine real market value, the department requires consideration of three approaches to value: the cost approach; the sales comparison approach; and the income approach. Oregon Administrative Rule (OAR) 150-308-

0240(2)(a). Even though all three approaches must be considered, all three may not be applicable to the valuation of the subject property. *Id*. The applicable approach to value is a question of fact determined on the record. *Pacific Power & Light Co. v. Dept. of Revenue*, 286 Or 529, 533, 596 P2d 912 (1979).

Both parties relied upon the sales comparison approach. In using the sales comparison approach "only actual market transactions of property comparable to the subject, or adjusted to be comparable, may be used." OAR 150-308-0240(2)(c). All sales used must be "verified to ensure they reflect arms-length market transactions." *Id*. Plaintiff's value evidence consists of a 2011 appraisal report and properties he found on Zillow. The 2011 appraisal report is not helpful to determine real market value as of January 1, 2020. Market conditions have changed since then, and Plaintiff made no attempt to adjust for those changes. Information from Zillow is not reliable. Its not clear if the data represent "actual market transaction" and, even if so, they have not been adjusted for differences from the subject properties. *See Glasser v. Douglas County Assessor*, TC-MD 130188N WL 6243710 at *5 (Or Tax M Div Dec 3, 2013). Plaintiff has failed to meet his burden of proof that real market value of each subject property was $60,000.

Defendant presented sales adjusted for time, size, and site improvements. Plaintiff's attempt to show that several of those sales were improved was unavailing. The sales appear to be similar in most respects to the subject properties. However, the Schlicker report establishes that the uncontrolled fill at the subject properties must be mitigated. Valasek suggested that a contractor might do so by scraping the land and then bringing in compacted fill with inspections at each stage of the process. Neither party presented evidence of the cost associated with that mitigation and it is unclear whether any of Defendant's comparable sales required the same extent of mitigation to build. For that reason, the court finds that Defendant has not met its

burden of proof that the real market value of each subject property was $150,000.

### III. CONCLUSION

Upon careful consideration, the court concludes that Plaintiff's appeals of the 2019-20 tax year must be dismissed; that Plaintiff failed to prove that the subject properties were unbuildable as of January 1, 2020; and that Plaintiff failed to prove that the real market value of each subject property was $60,000 as of January 1, 2020. The court further concludes that Defendant failed to prove that the 2020-21 real market value was $150,000. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's 2019-20 tax year appeals are dismissed.

IT IS FURTHER DECIDED that Plaintiff's 2020-21 tax year appeals are denied.

IT IS FURTHER DECIDED that Defendant's request to increase the 2020-21 real market values of Accounts 05023237 and 05023238 to $150,000 each is denied.

Dated this _____ day of March 2022.

ALLSION R. BOOMER
PRESIDING MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.***

***Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>***

***This document was signed by Presiding Magistrate Allison R. Boomer and entered on March 10, 2022.***